295 So.2d 792 (1974)
STATE of Louisiana
v.
Howard PATTERSON, alias Howard Jefferson.
No. 54290.
Supreme Court of Louisiana.
April 29, 1974.
Leonard W. Richey and Joseph Wilson, Jena, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Speedy O. Long, Dist. Atty., Don C. Burns, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Defendant was convicted after a trial by jury of manslaughter, a violation of R.S. 14:31, and was sentenced to eighteen years' *793 imprisonment. Upon this appeal, defendant relies on five bills of exceptions for a reversal of his conviction and sentence.
The facts surrounding the shooting incident out of which this prosecution arose, as revealed by the testimony of the State's witnesses, are as follows: The defendant and the decedent attended a dance at a skating rink outside Jena, Louisiana on Easter Sunday, April 22, 1973. One of the State's witnesses (the only witness who testified concerning an encounter between the defendant and the decedent prior to the wounding of the decedent) recounted a conversation between the two men and testified that, at the end of this conversation, decedent drew a knife and chased defendant, who ran away. This State's witness testified that the chase terminated and decedent returned to the place where the chase had begun. At some later time, according to the testimony of this witness, another chase took place. Numerous State's witnesses observed this incident and testified that decedent chased defendant with a knife. Defendant ran to the trunk of his car, removed a shotgun, warned decedent to stop, backed up a few steps and fired one shot when decedent disregarded the warning and continued the attack.[1] Decedent died as a result of the shotgun wound some seven to eight hours later. After the shooting, the defendant voluntarily and of his own accord turned himself in to the authorities at the sheriff's office.
Defendant reserved Bill of Exceptions No. 4 when the trial court denied his motion for a directed verdict of acquittal at the close of all of the evidence. The basis of the motion was that there was no evidence to show that the defendant's actions were not justified under R.S. 14:20. In denying defendant's motion the trial court stated: "I think there is sufficient issue here for the Jury to decide. I'm going to overrule the motion for a directed verdict."
A directed verdict of acquittal is provided by C.Cr.P. Article 778 which reads, in pertinent part:
"In a jury trial the court may direct a verdict of not guilty of one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction."
In State v. Douglas, 278 So.2d 485 (La.1973), this Court held that the provision for a directed verdict of acquittal in a jury trial, either on the court's own motion or on motion of the defendant, when the evidence is "insufficient to sustain a conviction" refers to a situation in which there is no evidence. Such an interpretation avoided conflict with the provisions of Article 7, § 10 and Article 19, § 9 of our state constitution.[2]
In order for us to hold that defendant was entitled to a directed verdict of acquittal at the close of all the evidence and that the trial court erred in declining to direct a verdict, it is necessary that we determine the State failed to present any evidence of the crime or an essential element thereof.
*794 R.S. 14:20 provides, in pertinent part, as follows:
"A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or
* * *."
It is well settled that a defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue. The State bears the burden of proving beyond a reasonable doubt that the homicide was feloniously committed and was not perpetrated in self-defense. State v. Carter, 227 La. 820, 80 So.2d 420 (1955); State v. Thornhill, 188 La. 762, 178 So. 343 (1938); State v. Disotell, 181 La. 149, 158 So. 825 (1934); State v. Richardson, 175 La. 823, 144 So. 587 (1932); State v. Conda, 156 La. 679, 101 So. 19 (1924) and numerous cases cited therein.
We have reviewed the testimony of each of the State's witnesses who testified upon the trial of this defendant. This testimony contains not one shred of evidence that the homicide was not justifiable. The testimony is uncontroverted that the defendant was in the process of being attacked with a knife by the decedent when he fired the fatal shot. It is undisputed that the defendant ran away from the decedent and attempted to withdraw after the verbal exchange took place. Testimony from witnesses for the State to the effect that decedent failed to abandon the chase and pursued the defendant with his knife drawn is uncontroverted. Likewise uncontroverted is testimony from State's witnesses who stated that the decedent continued his armed attack up to the moment that defendant discharged his shotgun and that decedent was within five or six feet of the defendant when the shot was fired.
After careful consideration of all of the State's evidence we conclude that there was no evidence to prove that this killing was unjustifiable. The State's witnesses testified to the chase. The State's witnesses testified that the decedent was still advancing with the drawn knife when defendant fired the shotgun. Some of the State's witnesses' testimony was to the effect that defendant warned the decedent to stop and retreated a few steps before discharging the shotgun. The State did not challenge any of this testimony by its own witnesses. It did not attempt to impeach any of the testifying witnesses on these particulars. The only attempt made by the State to impeach the testimony of one of its own witnesses came when the witness, Larry Thomas, testified that decedent had said nothing to him after the first chase incident about which Thomas testified.[3] No impeachment of the State's witnesses was otherwise attempted or accomplished by the defense.
*795 Having found merit in this bill of exceptions, we pretermit consideration of the remaining bills presented upon this appeal.
For the reasons stated herein, we reverse the defendant's conviction and sentence and remand to the trial court for proper judgment of acquittal in compliance with this opinion.
CALOGERO, J., assigns additional concurring reasons.
SANDERS, C. J., dissents and assigns written reasons.
SUMMERS, J., dissents and assigns written reasons.
MARCUS, J., dissents and assigns written reasons.
CALOGERO, Justice (concurring).
The complete lack of evidence to prove an essential element of the offense charged is a legal question reviewable by this Court. State v. Douglas, 278 So.2d 485 (La.1973). The State bore the burden of proving that there was an unjustifiable homicide, i. e., that the death was not the result of selfdefense. State v. Carter, 227 La. 820, 80 So.2d 420 (1955).
It proved a death. It produced no evidence to establish an unjustifiable homicide. In fact, all of the State's evidence corroborated the defense's contention that the death resulted from self-defense.
SANDERS, Chief Justice (dissenting).
LSA-R.S. 14:20 provides:
"A homicide is justifiable:
"(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger;"
Under the above article, it is quite clear that in order to justify a homicide, as being in self-defense, the person who is attacked must actually and reasonably believe that he is in imminent danger of losing his life or suffering serious personal injury. He must also reasonably believe that the killing is necessary to save himself from death or great bodily harm. The possibility of avoiding the taking of human life by retreat is one of the factors that the jury should consider in determining whether the defendant had a reasonable belief that the killing was necessary. State v. Bailey, 261 La. 831, 261 So.2d 583 (1972); State v. Rowland, 246 La. 729, 167 So.2d 346 (1964); Reporter's Comment, Subdivision (1) to LSA-R.S. 14:20.
Here, the record reflects that the shooting occurred in front of a skating rink at an unenclosed place. A number of people were present. After the victim drew his pocket knife, the defendant either trotted or walked (the testimony is conflicting) to his car, where he opened the trunk, removed a loaded shotgun, and killed his assailant. Defendant made no attempt to retreat beyond his car or to seek help.
Under these circumstances, there was some evidence from which the jury could conclude that, under the applicable law, the homicide was unjustifiable. Article 7, Section 10, of the Louisiana Constitution (1921), limits our review to questions of law. We are prohibited from reviewing the sufficiency of the evidence. Hence, I would affirm the conviction.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
This is another instance where this Court's majority substitutes its determination of the guilt or innocence of the accused for that of the jury. In doing so the majority transcends its authority and disregards the mandate of Article VII, Section 10, of the Constitution which *796 limits this Court's review to questions of law only.
I would uphold the jury verdict.
MARCUS, Justice (dissenting).
A review of the record convinces me that the trial judge properly overruled defendant's motion for a directed verdict. The evidence reveals that defendant was twenty-three years old while the victim was fifty-three. The place where the shooting occurred was unenclosed. There were a number of people present at the time of the shooting. Defendant did not seek help from any of these people nor did he attempt to escape beyond running to his car, opening his trunk from which he removed a shotgun and killing his assailant who was pursuing him with a knife. It is my opinion that under these circumstances there was some evidence upon which the jury could conclude that defendant was not justified in killing the victim.
For the assigned reasons, I respectfully dissent.
NOTES
[1] Some of the State's witnesses testified that they did not hear defendant warn decedent to stop and did not see defendant back away from decedent prior to the shooting, when the State inquired about these matters. Other State's witnesses testified affirmatively to the warning and the backing-away movements of the defendant.
[2] Article 7, § 10 provides that our appellate jurisdiction in criminal cases extends to questions of law alone. Article 19, § 9 provides that the jury is the judge of the law and the facts in a criminal case, "* * * having been charged as to the law applicable to the case by the presiding judge." Therefore, until the trial judge has charged the jury, legal questions, in which category the issue of "no evidence" falls, are the province of the trial judge.
[3] The witness, Larry Thomas, had given a statement concerning the incidents which are the subject of this case to the authorities after the shooting occurred. Contained in the statement was a reference to a remark decedent purportedly made to Larry Thomas when he abandoned the first chase of the defendant. Thomas' statement relates that when decedent returned to the place where the first chase had commenced, decedent stated: "I was just playing with him." At trial, State's witness Thomas, after twice testifying that decedent had said nothing to him when he abandoned the first chase, and after reviewing his statement which contained the reference to the "just playing" comment, admitted decedent claimed he was "just playing" with the defendant. When defense counsel asked the witness on cross-examination about this statement of decedent and inquired if defendant had been present when this statement was made, State's witness Thomas testified that defendant had not been present. Any testimony to the effect that decedent was only "playing" when he first chased defendant with the knife would have no tendency to show that the killing was felonious and not in self-defense, absent some indication that defendant heard or knew of this alleged statement by decedent.